

**Dated: March 12, 2019**

**The following is ORDERED:**



Janice D. Loyd
U.S. Bankruptcy Judge

_____

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| Bruce Dwain Copeland, | ) | Case No. 18-13948-JDL |
| | ) | Ch. 13 |
| Debtor. | ) | |
| | ) | |
| Bruce Dwain Copeland, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Adv. No. 19-01019-JDL |
| | ) | |
| Brian C. Ostler, Esq. | ) | |
| | ) | |
| | ) | |
| Defendant | ) | |

**ORDER DISMISSING CASE WITH PREJUDICE**

**I. Introduction**

This is an adversary proceeding brought by Debtor Bruce Dwain Copeland
("Copeland") against an attorney who allegedly forged his endorsement on a check almost
seventeen years ago. This matter is before the Court for consideration *sua sponte* upon
Copeland's *Complaint for; Forgery, Fraud, Unjust Enrichment, Deceptive Trade Practices*

(sic) filed on February 13, 2019 (the "Complaint") [Doc. 1].

## II. Jurisdiction

This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1334(b) as a matter arising in or related to a case under Title 11.[1]

## III. Background

### A. The Allegations of Copeland's Complaint

The Complaint alleges that in 2001 Mark Shapiro retained Copeland, a public adjuster, to assist him with the adjustment and presentation of his claim to Century National Insurance Company for fire damage to Shapiro's home in San Bernardino, California. While negotiating with the insurance company, Copeland loaned Shapiro money on three different occasions to avoid the family from being removed from the home. Because Century National was delaying in paying the claim, Copeland advised Shapiro to retain legal counsel. Shapiro and Copeland agreed that legal counsel rather than Copeland should adjust the insurance claim. Shapiro and Copeland agreed to cancel their existing agreement, and that Shapiro would repay the "loan" he had received from Copeland at the time he, Shapiro, received payment on his insurance claim.

Shapiro hired Defendant Brian C. Ostler ("Ostler") to represent him in resolving the claim with Century National. On April 15, 2002, Century National forwarded a check to Ostler in the amount $24,828.24. The Complaint alleges that Ostler forged the endorsements on the check of both Copeland and Countrywide Mortgage, as loss payee,

---

[1] Fed.R.Bankr.P. 7008 requires a Complaint contain a statement that the pleader does or does not consent to entry of final orders or judgment by the bankruptcy court. In his Complaint, Copeland states that he "does not accept the Bankruptcy Court's rulings and findings as final judgment". [Doc. 1].

and kept the proceeds for himself.  It is alleged that by virtue of Countrywide Mortgage not receiving the proceeds from the insurance settlement, it foreclosed on Shapiro's property.

The Complaint alleges that Ostler filed suit against Copeland "in June 2004 to cover his (Ostler's) fraud and theft of the insurance proceeds."  In 2009 Copeland moved from California to Oklahoma.  In 2010, Copeland received notice that Ostler had placed a lien on Copeland's brokerage account in the amount of $80,000.  In 2011, Copeland received pleadings in which he was named in a quiet title suit filed by Bank of America regarding Copeland's former home in California.  It was at this time that Copeland alleges that he "discovered the fraud and theft committed by (defendant) Ostler."

Copeland's Complaint alleges four counts:

(1)  Count 1 Forgery: "Ostler forged his name and signature to a draft issued by Century National Ins. Company. (and Ostler's) actions has now cause (sic) Copeland harm."

(2)  Count 2 Fraud: "Copeland alleges and believes that Ostlers (sic) committed fraud and have caused Copeland to suffer harm."

(3)  Count 3 Unjust Enrichment: "Copeland alleges and believes that (Ostler) has been unjustly enriched and has caused (Copeland) harm."

(4)  Count 4 Deceptive Trade Practices: Copeland "alleges and believes Ostler (sic) actions violated California's deceptive trade practice act and caused (Copeland) harm."

## B.  The California Bankruptcy

In 2005 Copeland filed bankruptcy in the United States Bankruptcy Court for the Central District of California (Case No. 05-11844).[2]  In that bankruptcy proceeding, on July

---

[2] This Court is entitled to take judicial notice of both its own docket sheets and other state or federal court docket sheets. *United States v. Ahidley*, 486 F.3d 1184,1192, n. 5 (10th Cir. 2007) ("We may exercise our discretion to take judicial notice of publicly-filed records in our court and certain other courts concerning matters that bear directly upon the disposition of the case at

1, 2015, Copeland filed an adversary proceeding against nine Defendants including Ostler and the Law Offices of Ostler.[3]  As against Defendant Ostler, Copeland asserted twelve (12) Causes of Action, asserting claims of slander of title, unfair and deceptive business practices (fraud, forgery, conspiracy and theft), negligence, gross negligence, conspiracy, fraud, actual fraud, extrinsic fraud, fraud upon the court, forgery, intentional infliction of emotional distress and abuse of process.[4]  The basis of all the Causes of Action against Ostler in the California adversary were the allegations that (1) he forged the signatures of Copeland and Bank of America on the insurance check from Century National to cover Shapiro's fire loss and (2) he had wrongfully garnished funds belonging to Copeland. These are the identical allegations, at least as can be discerned by this Court, as the claims made by Copeland in the present adversary proceeding.

On March 10, 2016, after notice to Copeland and a hearing on the same, the

---

hand."); *Adams v. Watts,* 2009 WL 5101759 (W.D. OK. 2009) (taking judicial notice of the public records of the District Court of Comanche County available on the Internet); *Shoulders v. Dinwiddie,* 2006 WL 2792671 (W.D. OK. 2006) (court may take judicial notice of state court records available on the world wide web including docket sheets in district courts); *Stack v. McCotter,* 79 Fed.Appx. 383, 391 (10th Cir. 2003) (unpublished opinion) (finding state district court's docket sheet is an official court record subject to judicial notice under Fed.R.Evid. 201).

Reference to facts that are susceptible to judicial notice does not convert a motion to dismiss into a motion for summary judgment. *Banco Santander De P.R. v. Lopez-Stubbe (In re Colonial Mortgage Bankers Corp.),* 324 F.3d 12,19 (1st Cir. 2003) ("[M]atters of public record are fair game in adjudicating Rule 12(b)(6) motions, and the court's reference to such matters does not convert a motion to dismiss into a motion for summary judgment.").

[3] *Bruce Dwain Copeland, Plaintiff v. Brian C. Ostler, Sr. Esq.; Law Offices of Brian C. Ostler, Sr.; Matthew J Rumishek, Esq.; David B Goluchik, Esq.; Todd Arnold, Esq.; Timothy Yoo, Esq.; Law Offices of Levene Neale, Bender, Rankin, Brill & Yoo , LLP; Broadway Advisors, LLC; and Mark G Shapiro, Defendants;*  Bankr. C. D. Cal., Adversary No. 15-ap-01351-ER. Defendant, *Century National Insurance Company* was subsequently added to the style of the case. The Court takes judicial notice of the Docket Sheet in that case.

[4] *Id.* [Calif. Adversary No. 15-1351, Doc.1].

California Bankruptcy Court entered its *Order Dismissing Complaint With Prejudice* as to several defendants, including Ostler and The Law Offices of Brian C. Ostler.[5]  No appeal was taken from that decision.

### IV. The Standards for a Motion to Dismiss

A motion to dismiss for "failure to state a claim upon which relief can be granted" is governed by Rule 12(b)(6) of the Fed.R.Civ.P., made applicable to adversary proceedings by Fed.R.Bankr.P. 7012.[6]  The purpose of a motion to dismiss under Rule 12(b)(6) is to test "the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true." *Mobley v. McCormick,* 40 F.3d 337, 340 (10th Cir. 1994).  In considering a motion to dismiss, the Court must construe a complaint in the light most favorable to the plaintiff, taken as true all factual allegations and making all reasonable inferences in the plaintiff's favor that can be drawn from the pleadings. *Casanova v. Ulibarri*, 595 F.3d 1120, 1124 (10th Cir. 2010); *Moore v. Guthrie*, 438 F.3d 1036, 1039 (10th Cir. 2006).  "That the Court accepts them as true, however, does not mean the allegations in a complaint are in fact true; a plaintiff is not required to prove his case at the pleading stage." *Higginbottom v. Mid-Del School District, et al.*, 2016 WL 951691 (W.D. Okla. 2016).  The Court must not "weigh potential evidence that the parties might present at trial" in order to test the sufficiency of the complaint.  *Sutton v. Utah State School for the Deaf And Blind*, 173 F.3d 1226, 1236 (10th Cir. 1999).  It is well recognized that "granting a motion to

---

[5] *Id*. [Calif. Adversary No. 15-1351, Doc. 88].

[6] All future references to "Rule" or "Rules" are to the Federal Rules of Bankruptcy Procedure or to the Federal Rules of Civil Procedure made applicable to bankruptcy proceedings, unless otherwise indicated.

dismiss is a harsh remedy and must be cautiously studied, not only to effectuate the spirit of the liberal rules of pleadings but also to protect the interests of justice". *Dias v. City and County of Denver*, 567 F.3d 1169, 1178 (10th Cir. 2009).

To survive a motion to dismiss under Rule 12(b)(6), the complaint must contain enough facts to state a cause of action that is "plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955 (2007). In *Twombly*, the Supreme Court ruled that a complaint "does not need detailed factual allegations," but must contain "enough facts to state a claim to relief that is *plausible* on its face." *Id*.(Emphasis added); In other words, the plaintiff must "nudge [his] claims across the line from conceivable to plausible." *Id*. Thus, in *Twombly*, the Supreme Court formulated a "plausibility standard" for evaluating whether a complaint survives a motion to dismiss. *In re Ward*, 589 B.R. 424, 427 (Bankr. W.D. Okla. 2018).

In applying *Twombly's* "plausibility standard", the Tenth Circuit has held that the standard lies as a middle ground between "heightened fact pleading" and "formulaic recitation of the elements of a cause of action." *Robbins v. Oklahoma, ex rel., Department of Human Services*, 519 F.3d 1242, 1247 (10th Cir. 2008). See also *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937 (2009) ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."); *Cook v. Baca,* 512 Fed.Appx. 810, 821 (10th Cir. 2013)**;** *Lamar v. Boyd,* 508 Fed.Appx. 711, 713-14 (10th Cir. 2013); *Ridge at Red Hawk, L.L.C.  v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (a complaint must give the court reason to believe the plaintiff has a reasonable likelihood of mustering factual

6

support for the claims raised).

## A. Sua Sponte Order of Dismissal

Although dismissals under Rule 12(b)(6) typically follow a motion to dismiss, giving the plaintiff notice and opportunity to amend his complaint, a court may dismiss a case *sua sponte* "when it is 'patently obvious' that the plaintiff could not prevail on the facts alleged, and allowing him an opportunity to amend his complaint would be futile." *McKinney v. State of Oklahoma, Department of Human Services, Shawnee, OK*, 925 F.2d 363, 365 (10th Cir. 1991); *Whitney v. State of New Mexico,* 113 F.3d 1170, 1173 (10th Cir. 1997); *Hall v. Bellmon*, 935 F.2d 1106, 1109-10 (10th Cir. 1991); *Curley v. Perry*, 246 F.3d 1278, 1284 (10th Cir. 2001) ("*sua sponte* dismissal of a meritless complaint that cannot be salvaged by amendment comports with due process and does not infringe the right of access to the courts."). "A court may raise the issue of res judicata *sua sponte* if it is on notice that it has previously decided the underlined substantive issue in dispute. This result is consistent with one of the policies underlying res judicata: the avoidance of unnecessary judicial waste." *In re Ginter*, 349 B.R.193, 197 (8th Cir. BAP 2006) (quoting *Arizona v. California,* 530 U.S. 392, 412, 120 S.Ct. 2304 (2000)); *United States v. Sioux Nation of Indians*, 448 U.S. 371, 432 (1980) (Although a court's authority to dismiss a complaint *sua sponte* is limited, this situation fits squarely within the exception to the rule because "the court is on notice it has previously decided the issue presented."

## B. Claim and Issue Preclusion (Res Judicata).

This Court uses the terms "claim preclusion" and "issue preclusion" rather than "res judicata" and "collateral estoppel." "Claim preclusion works to preclude relitigation of

matters that have already been decided as well as matters that could have been raised in a prior proceeding but were not." *In re Hauck*, 466 B.R. 151, 161 (Bankr. D. Colo. 2012). Under [claim preclusion] "a final judgment on the merits bars further claims by parties or their privies based on the same cause of action." *Montana v. United States*, 440 U.S. 147, 153, 99 S.Ct. 970, 973 (1979). "[Claim preclusion] thus encourages reliance on judicial decisions, bars vexatious litigation, and frees the courts to resolve other disputes." *Brown v. Felsen,* 442 U.S. 127, 131, 99 S.Ct. 2205, 2209 (1979); *Wilkes v. Wyoming Department of Employment Division of Labor Standards,* 314 F.3d 501, 503-04 (10th Cir. 2003) *(*"Under res judicata, or claim preclusion, a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in the prior action."); *Goldsmith v. M. Jackman & Sons, Inc*., 327 F.2d 184, 185 (10th Cir. 1964) ([claim preclusion] stands for the proposition that "a judgment rendered by a court of competent jurisdiction upon a question involved in one suit is conclusive upon that question in any subsequent litigation between the same parties."   Claim preclusion generally requires the satisfaction of four elements: (1) the prior suit must have ended with a judgment on the merits; (2) the parties must be identical or in privity; (3) the suit must be based on the same cause of action; and (4) the party must have had a full and fair opportunity to litigate the claim in the prior suit. *In re Mersmann*, 505 F.3d 1033, 1049 (10th Cir. 2007); *In re Garland*, 417 B.R. 805, 818 (10th Cir. BAP 2009).

Issue preclusion bars "successive litigation of (1) an issue of fact or law (2) actually litigated and resolved in a valid court determination (3) essential to the prior judgment, even if the issue recurs in the context of a different claim." *In re Zwanziger*, 741 F.3d 74,

77 (10th Cir. 2014) (citing, *Taylor v. Sturgell,* 553 U.S. 880, 892,128 S.Ct. 2161 (2008)).

Issue preclusion prevents a party that has lost the battle over an issue in one lawsuit from

relitigating the same issue in another lawsuit. *Melnor, Inc. v. Corey (In re Corey)*, 583 F.3d

1249, 1251 (10th Cir. 2009). Claim and issue preclusion apply in bankruptcy.  *Brown v.*

*Felsen*, 442 U.S. 127, 134-39, 99 S.Ct. 2205 (1979); *Grogan v. Garner*, 498 U.S. 279, 285,

111 S.Ct. 654 (1991).

Unquestionably, the elements for both claim and issue preclusion are established

in the record before the court. Copeland is asserting against Ostler in the present case the

identical causes of action which he asserted in the California adversary proceeding which

was dismissed with prejudice and from which no appeal was taken. Copeland cannot

"forum shop" to assert them again here.

### C. Statute of Limitations.

While issue and claim preclusion clearly establish a basis for the dismissal of the

present lawsuit, the face of Copeland's Complaint also shows that his claims are time-

barred.  In his Complaint Copeland alleges that Ostler forged his endorsement on a check

in April 2002, but it was not until he returned to California in 2011 that he "discovered the

fraud and theft committed by Ostler." Therefore, the filing of the present adversary

proceeding took place as long as almost seventeen (17) years after the fraud occurred or,

taking Copeland's allegations as to when he learned of the fraud as true, more than seven

(7) years after Copeland's alleged discovery of the fraud.  As to his claim that Ostler had

placed a lien on his brokerage account, as opposed to his claims of forgery, Copeland

alleges in the Complaint that he received notice of the same in 2010.

It is well established that when a federal court sits in diversity, it must look to the forum state's choice of law rules to determine the controlling *substantive* law.  *Guaranty Trust Co. Of New York v. York*, 326 U.S. 99, 112, 65 S.Ct.1464 (1945); *Klaxon Co. v. Stentor Electric Mfg. Co., Inc.,* 313 U.S. 487, 496, 61 S.Ct. 1020 (1941); *Garcia v. International Elevator Co., Inc.,* 358 F.3d 777, 779 (10th Cir. 2004); *New York Life Insurance Co. v. K N Energy, Inc.,* 80 F.3d 405, 409 (10th Cir. 1996).  On the other hand, when it comes to an issue of procedural law, the general rule is that the law of the forum state applies.  *Sun Oil Co. v. Wortman*, 486 U.S. 717, 722, 108 S.Ct. 2117 (1988) (holding that the Constitution does not bar application of the forum state's statute of limitations to claims governed by the substantive law of a different state).  Statutes of limitation are generally regarded as procedural, and thus many federal courts hold that the applicable statute limitations is that of the forum.  *The Dow Chemical Corp. v. Weevil-Cide Co., Inc.* 897 F.2d 481, 483-84 (10th Cir. 1990) ("A federal court hearing a diversity action applies the statute of limitations which would be applied by a court of the forum state.").  See also *In re Kimball*, 561 B.R. 861 (Bankr. W.D. Okla.2016). For choice of law purposes, Oklahoma regards a statute of limitations as procedural and applies the law of the forum. *Trinity Broadcasting Corp. v. Leeco Oil Co.*, 1984 OK 80, 692 P.2d 1364; *Western Natural Gas Co. v. Cities Service Gas Co.* 507 P.2d 1236 (Okla. 1972); *Masquat v. DaimlerChrysler Corp.*, 2008 OK 67, 195 P.3d 48.

Here, in contrast to a federal court sitting in diversity jurisdiction, we are dealing with a bankruptcy court exercising federal question jurisdiction pursuant to 28 U.S.C. §§ 1334 and 157(c)(1).  The U.S. Supreme Court has never extended its holding in *Klaxon* applying

10

the choice-of-law rules of the forum state in diversity cases to cases involving bankruptcy courts. Appellate and bankruptcy courts are divided on the issue of whether bankruptcy courts should apply the choice-of-law rules of the forum state or those of federal common law.

The Tenth Circuit has held that where jurisdiction is not based on diversity of citizenship, federal common law choice-of-law rules apply. Federal common law follows the approach outlined in the *Restatement (Second) of Conflict of Laws*. In *Held v. Manufacturers Hanover Leasing Corp.*, 912 F.2d 1197, 1202-03 (10th Cir. 1990), the Tenth Circuit adopted the statute of limitations choice-of-law provision of the *Restatement (Second) of Conflict of Laws* § 142. The *Restatement* takes the position that statute of limitations choice of law questions should be decided in the same way as choice of law questions generally, abandoning its earlier position that statutes of limitation should be treated as procedural for choice of law purposes and governed by the law of the forum.[7] *Hamilton v. Cunningham*, 880 F.Supp. 1407, 1413 (D. Colo. 1995); *Lindsay v. Beneficial Reinsurance Co. (In re Lindsay)*, 59 F.3d 942, 948 (9th Cir. 1995) ("In federal cases with exclusive jurisdiction in federal court, such as bankruptcy, the court should apply federal, not forum state, choice of law rules."). Thus, the first paragraph of the Restatement § 142 provides the question of whether a claim will be maintained against the defense of the

---

[7] Prior to the 1988 amendments, the *Restatement (Second) of Conflict of Laws* § 142 provided:

"(1) An action will not be maintained if it is barred by the statute of limitations of the forum, including a provision barring the statute of limitations of another state.

(2) An action will be maintained if it is not barred by the statute of limitations of the forum, even though it would be barred by the statute of limitations of another state, except as stated in § 143."

11

statute of limitations "is determined under the principles stated in § 6", i.e., the local law of the state with the most significant relationship to the limitations issue will govern. If the maintenance of a claim would serve no substantial interest of the forum and the claim would be barred by the statute limitations of a State with a more significant relationship to the parties or the occurrence, courts may decline to apply a forum's statute of limitations pertaining to the claim and instead apply the other state's statute barring it. *Restatement (Second)* § 142(2).

If the Court were to apply the criteria of *Restatement* § 142, it would appear that California has the most "significant relationship to the parties and the occurrence" so as to apply that state's statute of limitations. The alleged wrongful acts by Ostler occurred in California, and both Ostler and Copeland were residents of California at the time of the alleged forgery. In California, the limitations period for an action based on fraud or mistake is three (3) years from the date of discovery by the aggrieved party. Cal. Civ. Proc. Code § 338(d). While Copeland has not specifically cited the same, presumably his claim for Ostler's violation of "California's deceptive trade practice act" refers to the California Consumers Legal Remedies Act ("CLRA") which bans certain practices that the California legislature has deemed to be "unfair" or "deceptive." Cal. Civ. Code § 1770. The statute of limitations for bringing an action under the CLRA is three (3) years from the date of the commission of the alleged method, act or practice. Cal. Civ. Code § 1783.[8] Copeland has also made a claim for unjust enrichment. "[U]njust enrichment is not a cause of action, so long as another cause of action is available that permits its restitutionary damages." *In re*

---

[8] This provision is consistent with the general statute limitations of three (3) years for "an action upon a liability created by statute" under Cal. Civ. Code § 338(a).

12

*ConAgra Foods Inc.*, 908 F.Supp.2d 1090, 1114 (C.D. Cal. 2012). The underlying causes of action for which Copeland seeks recovery for unjust enrichment are the tort claim of fraud (by forgery)[9] and a violation of the CLRA, both of which have three (3) year statutes of limitation. *Federal Deposit Insurance Corp. v. Dintino*, 167 Cal.App.4th 333, 84 Cal. Rptr.3d 38 (Cal. App. 2008).

As stated above, the alleged forgery by Ostler took place in April 2002. Copeland certainly knew of this, at the very latest, when he filed suit against Ostler and others in the United States District Court for the Western District of Oklahoma on December 4, 2012.[10] In that lawsuit, Copeland alleged that Ostler had forged the check in 2002; that on October 28, 2002, on behalf of Shapiro, Ostler had filed suit against Copeland, Century National and Bank of America; and that the claims against Bank of America were dismissed after it "agreed to drop any claims for a forgery defense."[11] Copeland further alleged that "in December 2004 or thereabout, Copeland received a notice from his bank that his "accounts had been frozen for a judgment in San Bernardino (Superior Court) in 2004 in

---

[9] There is no civil cause of action based on forgery alone. *Lowry v. Metropolitan Transit Board MTBS,* 2010 WL 1571216 (S.D. Cal. 2010). California Penal Code § 470 governs the crime of forgery and does not give a private cause of action. *Rodriguez v. U.S. Bank National Association,* 2012 WL 3062690 (N.D. Cal. 2012). "Because '[f]ederal courts are very reluctant to infer a private right of action from a criminal prohibition alone', this order finds that plaintiff may not state an independent civil claim for forgery." *Id.*, 2010 WL 3062690 at *4. See *Sohal v. City of Merced Police Department*, 2009 WL 961465, at *7 (E.D. Cal. 2009); *Vlasich v. Fishback,* 2007 WL 2572111 at *6 (E.D. Cal. 2007) (citing *Chrysler Corp. v. Brown*, 441 U.S. 281, 316, 99 S.Ct. 1705 (1979)).

[10] *Bruce D. Copeland, Plaintiff v. Brian C. Ostler, Sr., et. al, Defendants, Case No. CIV*-12-1337-HE. This case was dismissed by the Court on May 20, 2013, for improper venue. Copeland refiled the case as an adversary proceeding in the Bankruptcy Court for the Central District of California in 2015. (See Footnote 3, 4 & 5 above).

[11] *Id.* [WD OK No. CIV-12-1337,  Doc.1, ¶ 18, pg. 9].

December 2004...(which) Copeland knew was from the case with Shapiro."[12]

Under any factual scenario, including the date of the alleged forgery, the date when Copeland became aware of Ostler's suit against him in 2004, when Copeland learned of the forgery in 2010 as alleged in the present Complaint or when Copeland filed suit in 2012 against Ostler in the Federal Court in Oklahoma City, the filing of the present adversary proceeding in February 2019 is barred by the statute of limitations. Accordingly,

**IT IS ORDERED** that Plaintiff Copeland's *Complaint for; Forgery, Fraud, Unjust Enrichment Deceptive Trade Practices* (sic) filed on February 13, 2019 (the "Complaint") [Doc. 1] is hereby **Dismissed With Prejudice**.

# # #

---

[12] *Id*. [WD OK No. CIV-12-1337, Doc.1, ¶¶ 18, 19 and 21].